**James C. BURT, M.D., Plaintiff,**

v.

**BLUE SHIELD OF SOUTHWEST OHIO, et al., Defendants.**

**No. C–3–83–55.**

United States District Court,
S.D. Ohio, W.D.

Jan. 27, 1984.

Dwight D. Brannon, Michael T. Tucker, Dayton, Ohio, for plaintiff.

Laura G. Kuykendall, Michael J. Canter, Columbus, Ohio, for defendant Blue Shield.

Stephen M. Pfarrer, Dayton, Ohio, William J. Toppeta, New York City, for defendant Metropolitan Life.

DECISION AND ENTRY; DEFENDANT OHIO MEDICAL'S MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS SUSTAINED; DEFENDANT METROPOLITAN'S MOTION FOR SUMMARY JUDGMENT AND TO DISMISS SUSTAINED; PLAINTIFF'S MOTION TO FILE AN AMENDED COMPLAINT OVERRULED; CLERK TO ENTER JUDGMENT FOR DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, District Judge.

Plaintiff James C. Burt, M.D., is a physician licensed to practice medicine in Ohio. He is a specialist in the field of gynecology and obstetrics. In the practice of his specialty, Plaintiff has developed a surgical procedure for the reconstruction of women's vaginas. The Defendants, Ohio Medical Indemnity Mutual Corporation ("Ohio Medical")[1] and Metropolitan Life Insurance Company ("Metropolitan") provide medical insurance policies to individuals and groups. Some of Plaintiff's patients are insured by one or the other of the Defendants.

In January, 1978, Defendant Ohio Medical ceased paying Plaintiff's fee for vaginal reconstructive surgery. A few months later, Defendant Metropolitan also ceased paying Plaintiff for this procedure.

As a result of the Defendants' decisions, Plaintiff initiated this action. In his complaint (Doc. # 1), Plaintiff alleges that after Ohio Medical stopped paying his fees, Metropolitan took the same action "pursuant to an agreement with [Ohio Medical] that neither Defendant would cover Plaintiff's

vaginal reconstructive procedures." Complaint, ¶ 8. Since this agreement was entered into, neither Defendant has covered Plaintiff's fee for the procedure. *Id.* Plaintiff alleges that the agreement is an illegal restraint of trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. Complaint, ¶ 9.

Plaintiff asserts five additional claims against the Defendants, individually.[2] Each of these claims is for breach of insurance contract resulting from one of the Defendants refusing to pay Plaintiff's fee for performing vaginal reconstructive surgery. In each instance, a patient of Plaintiff, who is also insured by a Defendant, has assigned her claim to Plaintiff. The Plaintiff seeks to have the Court exercise pendent jurisdiction over these claims.

This cause is now before the Court on the Defendants' motions for summary judgment and to dismiss. First, the Court will address Ohio Medical's motions. Then, the Court will turn to those of Metropolitan.

## I. *Motions of Ohio Medical Blue Shield of Southwest Ohio*

Ohio Medical has filed a motion for summary judgment on Plaintiff's antitrust claim and a motion to dismiss the breach of insurance contract claims for lack of subject matter jurisdiction. (Doc. # 19).

### A. *Ohio Medical's Motion for Summary Judgment*

Ohio Medical seeks summary judgment on Plaintiff's antitrust claims. In the recent case of *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir.1983); the court discussed the use of summary judgment in antitrust litigation.

It is a well established rule that motions for summary judgment are disfavored in antitrust litigation and that the standard

---

1. In Plaintiff's complaint, Defendant Ohio Medical Indemnity Mutual Corporation is referred to as Blue Shield of Southwest Ohio; however, the former is its correct corporate name. Consequently, the Court will use the former.

2. Plaintiff's second, third and sixth claims are against Metropolitan. The fourth and fifth claims are against Ohio Medical.

for granting summary judgment is strict. *See, First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 284–90, 88 S.Ct. 1575, 1590–93, 20 L.Ed.2d 569, *reh'g denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Smith v. Northern Michigan Hospitals, Inc.*, 703 F.2d 942, 947 (6th Cir.1983); *Davis-Watkins Co. v. Service Merchandise*, 686 F.2d 1190, 1197 (6th Cir.1982); *Taylor Drug Stores, Inc. v. Associated Dry Goods Corp.*, 560 F.2d 211, 213 (6th Cir.1977). However, this general rule does not preclude the use of summary judgment in appropriate antitrust litigation. *See, First National Bank of Arizona, supra,* 391 U.S. at 288–90, 88 S.Ct. at 1592–93; *Smith, supra,* 703 F.2d at 947–48; *Davis-Watkins Co., supra,* 686 F.2d at 1197; *Lupia v. Stella D'Oro Biscuit Co., Inc.*, 586 F.2d 1163, 1166–67 (7th Cir.1978), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1791, 60 L.Ed.2d 242 (1979). *See also,* Fed.R. Civ.P. 56 advisory committee note (1982) (Summary judgment is "inapplicable to all actions"). Indeed, the very purpose of a motion for summary judgment, to eliminate a trial where it would be unnecessary and merely result in delay and expense, warrants summary disposition of cases when appropriate.

*Id.* at 1324.

■ In antitrust litigation, as in all litigation, summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). In ruling on a motion for summary judgment, the court must construe the evidence in the light most favorable to the opposing party. *Willetts v. Ford Motor Co.*, 583 F.2d 852, 855 (6th Cir.1978); *Weaver v. Shopsmith, Inc.*, 556 F.Supp. 348, 351 (S.D.Ohio 1982). However, if such a motion is made and properly supported, the opposing party may not rest on its pleadings, but must present affidavits or other evidence, setting forth specific facts to demonstrate a genuine issue of a material fact. *Gillmore v. Procter & Gamble Company*, 417 F.2d 615 (6th Cir.1969); Fed.R.Civ.P. 56(e).

With these standards in mind, the Court turns to the arguments that Ohio Medical makes to support its motion for summary judgment. Ohio Medical points out that the essence of Plaintiff's antitrust claim is an alleged agreement between it and Metropolitan to cease paying for Plaintiff's procedure. Ohio Medical argues that the existence of such an agreement is not a genuine issue of fact. There simply was not such an agreement, and in the absence of one, Ohio Medical argues that it did not violate § 1 of the Sherman Act, 15 U.S.C. § 1. Consequently, it reasons that it is entitled to judgment as a matter of law on Plaintiff's antitrust claim.

In making this argument, Ohio Medical relies on the affidavits of Homer S. Harrison (Doc. # 20) and John F. Esposito (Doc. # 14) and Plaintiff's response to Metropolitan's first set of · interrogatories (Doc. # 10).

In answering Metropolitan's Interrogatory No. 1, Plaintiff set forth the facts upon which he based the allegation in ¶ 8 of the complaint that the Defendants had such an agreement.

Plaintiff learned of the agreement in the Spring of 1979 at a meeting where Mr. Esposito and Mr. Kennedy of Metropolitan Life and Plaintiff were present. This meeting occurred at Plaintiff's request because Metropolitan Life had recently altered the payments he received for his vaginal reconstructive surgery. Plaintiff was extremely distressed by this alteration since he had only recently came to a payment agreement for the vaginal reconstructive surgery with Mr. Silvator, Mr. Kennedy's predecessor. Mr. Esposito, during the course of this meeting, informed Plaintiff that Blue Shield "told" Metropolitan Life to alter the payment schedule for Plaintiff's vaginal reconstructive surgery. When Plaintiff questioned this, Mr. Esposito informed Plain-

tiff that Blue Shield "ordered" the alteration because Blue Shield covers General Motors' employees in Michigan and Metropolitan Life covers General Motors' employees in the Dayton, Ohio area.

The affidavits of Harrison, Senior Vice President of External Relations for Ohio Medical, and Esposito, Divisional Manager, Group National Accounts for Metropolitan, conclusively demonstrate that Ohio Medical and Metropolitan did not have an agreement with respect to payment or nonpayment of Plaintiff's fees. Rather, the "Blue Shield" referred to in the above quoted response was Blue Cross and Blue Shield of Michigan ("BCBSM").[3] The affidavits established that BCBSM was responsible for coverage of GM employees in Michigan. Ohio Medical had no involvement with providing health benefits to GM employees in either Ohio or Michigan. Further, although both Ohio Medical and BCBSM operate under the name "Blue Shield," they are separate corporate entities.

Not only has Plaintiff failed to file a response to Ohio Medical's motions, his response to Metropolitan's motion (Doc. # 31) effectively concedes the accuracy of Ohio Medical's position.

What lay behind Metropolitan's action, and what implicates the federal antitrust laws and not merely the law of contract, was a contract, combination, or conspiracy between Metropolitan and Blue Cross and Blue Shield of Michigan (BCBSM).

Plaintiff simply mistook Ohio Medical for BCBSM.

■ Based on the foregoing, the Court concludes that no genuine issue of fact (material or otherwise) exists, regarding the agreement that Plaintiff alleges was entered into between Ohio Medical and Metropolitan. There was not such an agreement.

Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits, "Every contract, combination ... or conspiracy, in restraint of trade

...." Essential to its violation is some sort of agreement. *Six Twenty-Nine Productions, Inc. v. Rollins Telecasting, Inc.,* 365 F.2d 478, 484 (5th Cir.1966); *Viking Theatre Corp. v. Paramount Film Distributing Corp.,* 320 F.2d 285, 293 (3d Cir. 1963), *aff'd by an equally divided Court,* 378 U.S. 123, 84 S.Ct. 1657, 12 L.Ed.2d 743 (1964). Absent an agreement, there can be no violation of § 1 of the Sherman Act. *United States Brewers Association v. Healy,* 532 F.Supp. 1312, 1329 (D.Conn. 1982). Inasmuch as the Court has determined that there is not a genuine issue of fact about the existence of such an agreement and that no such agreement exists, Ohio Medical is entitled to judgment as a matter of law. Accordingly, Ohio Medical's motion for summary judgment is sustained.

In his fourth and fifth claims, Plaintiff states claims for breach of insurance contract against Ohio Medical. No independent grounds for federal jurisdiction are asserted. Rather, Plaintiff seeks to have the Court exercise pendent jurisdiction over these claims. Ohio Medical has filed a motion to dismiss these claims for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Ohio Medical argues that the Court should decline to exercise pendent jurisdiction over these state law claims.

■ It is well settled that in the absence of an independent basis of jurisdiction, a federal court should not exercise pendent jurisdiction over state law claims when the federal claims, to which the Plaintiff seeks to append state claims, are not substantial enough to withstand dismissal prior to trial. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Wilson v. Moss,* 537 F.Supp. 281, 290–91 (S.D.Ohio 1982); *Arnson v. General Motors Corporation,* 377 F.Supp. 209, 214 (N.D.Ohio 1974). *See also, Nash & Associates, Inc. v. Lum's of Ohio, Inc.,* 484 F.2d 392, 395–96

---

**3.** The role of BCBSM in the decision not to pay Plaintiff's fees is fully developed in discussion of Metropolitan's motions.

(6th Cir.1973). Plaintiff's federal claim against Ohio Medical, the antitrust claim, was not substantial enough to withstand a motion for summary judgment. Accordingly, the Court declines to exercise pendent jurisdiction over the state claims.[4] Therefore, Ohio Medical's motion to dismiss is sustained, and Plaintiff's fourth and fifth claims are dismissed without prejudice.

## II. *Motions of Defendant Metropolitan*

Like Ohio Medical, Metropolitan has filed a motion for summary judgment on the Plaintiff's antitrust claim and a motion to dismiss Plaintiff's breach of insurance contract claims for lack of subject matter jurisdiction (Doc. # 13).

### A. *Metropolitan's Motion for Summary Judgment*

In ruling on Metropolitan's motion for summary judgment, the Court is mindful of the standards governing the granting of summary judgment and the use of summary judgment in antitrust litigation. These are set forth above in the Court's discussion of Ohio Medical's motion for summary judgment. They need not be repeated herein.

■ In this motion, Metropolitan argues that there is not a genuine issue of fact regarding an agreement between it and either Ohio Medical or BCBSM on the subject of ceasing to pay for Plaintiff's procedure. The only such agreement, according to Metropolitan, is one between it and BCBSM relating to Metropolitan's provision of health insurance for General Motors employees. However, Metropolitan's argument continues, the agreement between it and BCBSM is exempt from antitrust laws under the nonstatutory labor exemption. Consequently, Metropolitan is immune from antitrust liability based upon that

agreement. To support its motion, Metropolitan relies on the affidavits of John E. Esposito (Doc. # 14 and # 33) as well as upon Plaintiff's answers to Metropolitan's First Set of Interrogatories (Doc. # 10).

In answering Metropolitan's Interrogatory No. 1, Plaintiff set forth the facts upon which he based his allegation that Metropolitan ceased paying his fee because of an agreement with Ohio Medical.

Plaintiff learned of the agreement in the Spring of 1979 at a meeting where Mr. Esposito and Mr. Kennedy of Metropolitan Life and Plaintiff were present. This meeting occurred at Plaintiff's request because Metropolitan Life had recently altered the payments he received for his vaginal reconstructive surgery. Plaintiff was extremely distressed by this alteration since he had only recently came to a payment agreement for the vaginal reconstructive surgery with Mr. Silvator, Mr. Kennedy's predecessor. Mr. Esposito, during the course of this meeting, informed Plaintiff that Blue Shield "told" Metropolitan Life to alter the payment schedule for Plaintiff's vaginal reconstructive surgery. When Plaintiff questioned this, Mr. Esposito informed Plaintiff that Blue Shield "ordered" the alteration because Blue Shield covers General Motors' employees in Michigan and Metropolitan Life covers General Motors' employees in the Dayton, Ohio area.

In his affidavit of April 28 (Doc. # 14), Esposito elaborated on this conversation. He states that he had two conversations with Plaintiff about coverage of his surgical procedure. In each, he informed Plaintiff that because the procedure was not generally accepted, it was not covered by Metropolitan's policies.

He also told Plaintiff that there was another reason why the procedure was not

---

**4.** In reaching this decision, the Court has assumed, without deciding, that exercise of pendent jurisdiction over the state law claims is within the Court's discretion. However, pendent jurisdiction may be exercised only when the state and federal claims "[d]erive from a common nucleus of operative fact." *United*

*Mine Workers v. Gibbs, supra,* 383 U.S. at 725, 86 S.Ct. at 1138. It is somewhat questionable whether Plaintiff's claims arise from the same operative facts. Therefore, it is questionable whether the Court even has the discretion to exercise pendent jurisdiction over the state claims.

covered for GM employees for whom Metropolitan provided health care benefits. This was because the collective bargaining agreements between GM and the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW"), the International Union of Electrical, Radio and Machine Workers ("IUE") and the United Rubber, Cork, Linoleum, and Plastic Workers of America ("Rubber Workers") established nationwide, uniform health care benefits for GM employees. In order to assure uniformity of benefits, the collective bargaining agreements established BCBSM as the "Control Plan." [5] Under this system, questions about the scope or level of benefits were referred to the Control Plan, BCBSM, for interpretation. A question about coverage for Plaintiff's procedure had been referred to the Control Plan, and BCBSM had issued an interpretation that the procedure was not covered.

Esposito's affidavit of April 28th states that, to his knowledge, neither he nor anyone else at Metropolitan communicated with Ohio Medical about coverage of Plaintiff's procedure.[6] In his affidavit of September 22nd (Doc. # 22), Esposito states that the only agreement between BCBSM and Metropolitan, regarding coverage of Plaintiff's procedure, related to health insurance for GM employees. The Plaintiff's affidavit (Doc. # 36) does not dispute any of the foregoing. It merely reiterates the substance of the above quoted answer to Metropolitan's Interrogatory No. 1.

Based upon the foregoing, the Court concludes that there is no genuine issue of fact about an agreement between Metropolitan and either Ohio Medical or BCBSM relating to the non-payment of Plaintiff's fees for his surgical procedure. The only such agreement was between Metropolitan and BCBSM about providing health insurance to employees of General Motors. In ruling on Ohio Medical's motion for summary judgment, the Court determined that Metropolitan and Ohio Medical had no agreement about the payment of Plaintiff's fee.[7]

Metropolitan argues that the agreement with BCBSM is exempt from antitrust liability because it falls within the non-statutory labor exception to the Sherman Act.

■ The non-statutory exemption [8] for labor-employer agreements is an accommodation of the Sherman Act to the policy of national labor laws. *Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen of North America,* 381 U.S. 676, 689, 85 S.Ct. 1596, 1601, 14 L.Ed.2d 640 (1965) (Opinion of White). In *Mackey v. National Football League,* 543 F.2d 606 (8th Cir.1976), *cert. dismissed,* 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977), the Court set forth broad standards to be used in determining whether the non-statutory exemption applies to an employer/labor agreement.

We find the proper accommodation to be: First, the labor policy favoring collective bargaining may potentially be given preeminence over the antitrust laws where

---

**5.** The exhibits to Esposito's affidavit, supplemental agreements on insurance to the collective bargaining agreement between GM and the UAW, the IUE and the Rubber Workers, confirm Esposito's affidavit.

**6.** The affidavit of Homer S. Harrison, Senior Vice President of External Relations for Blue Shield of Southwest Ohio, states that there was no agreement between Metropolitan and Blue Shield of Southwest Ohio relating to coverage for Plaintiff's procedure.

**7.** In his complaint, Plaintiff alleges that Metropolitan and Ohio Medical entered into the agreement to stop paying Plaintiff's fee. The only agreement relating to that subject was one between Metropolitan and BCBSM. Nonetheless, in ruling on Metropolitan's motion for summa-

ry judgment, the Court will assume that Plaintiff alleged an agreement between Metropolitan and BCBSM. In their memoranda, the parties have implicitly made this assumption by addressing the issue of whether this agreement falls within the non-statutory, labor exemption.

**8.** Labor unions when acting alone are statutorily exempt from antitrust laws for certain specified conduct. *See, e.g., United States v. Hutcheson,* 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788 (1941); *United Mine Workers v. Pennington,* 381 U.S. 657, 661–62, 85 S.Ct. 1585, 1588–1589, 14 L.Ed.2d 626 (1965); *Home Box Office v. Directors Guild of America,* 531 F.Supp. 578, 585–87 (S.D.N.Y.1982) (listing statutes).

the restraint on trade primarily affects only the parties to the collective bargaining relationship. *See, Connell Co. v. Plumbers & Steamfitters, supra* [421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975)]; *Meat Cutters v. Jewel Tea, supra; Mine Workers v. Pennington, supra*. Second, federal labor policy is implicated sufficiently to prevail only where the agreement sought to be exempted covers a mandatory subject of collective bargaining. *See, Meat Cutters v. Jewel Tea, supra; Mine Workers v. Pennington, supra*. Finally, the policy favoring collective bargaining is furthered to the degree necessary to override the antitrust laws only where the agreement sought to be exempted is the product of bona fide arm's-length bargaining. *See, Meat Cutters v. Jewel Tea, supra*.

543 F.2d 614–15 (footnotes omitted). These principles were quoted with approval and relied upon by the Sixth Circuit in *McCourt v. California Sports, Inc.*, 600 F.2d 1193, 1197–98 (6th Cir.1979).[9]

■ The agreement which is being challenged herein is an agreement between General Motors and the unions representing its organized employees, the UAW, the IUE and the Rubber Workers which required uniform insurance coverage for all employees covered by these collective bargaining agreements. To implement this goal, the collective bargaining agreements set up BCBSM as the control plan. BCBSM was to determine what procedures were covered by the policy and to inform other carriers of this. This primarily affects General Motors and its employees, the parties to the collective bargaining agreements. The effect of the agreement between GM and its unions is to assure uniform insurance coverage for GM's employees. Consequently, the first policy consideration favors the exemption.

Second, insurance coverage is unquestionably the subject of mandatory bargaining. *Bastian-Blessing v. NLRB*, 474 F.2d 49, 52 (6th Cir.1973). Hence, the second policy consideration also favors the exemption.

There is no hint that the provisions in the contracts between GM and the unions representing employees is other than the product of collective bargaining. Thus, the third policy principle propounded in *Mackey* bodes toward the exemption.

The policy purposes for the non-statutory labor exemption are fulfilled in the present case. Moreover, other courts have concluded that the exemption is available in similar situations. In *Michigan State Podiatry Association v. Blue Cross and Blue Shield of Michigan*, 1982–2 Trade Cas. (CCH) ¶ 64,801 (E.D.Mich.1982), the court considered an antitrust challenge by an association of suppliers to the insurance provisions in the collective bargaining agreement between Chrysler Corporation and the UAW. The agreement required that predetermination of medical necessity be made prior to the performance of certain surgical procedures on feet. The plan was administered by Blue Cross and Blue Shield of Michigan. The court held that the agreement, as administered by BCBSM, came with the non-statutory exemption; thus, Blue Cross and Blue Shield of Michigan was immune. *See also, Grigg v. Blue Cross and Blue Shield of Michigan*, 1980–2 Trade Cas. (CCH) ¶ 63,500 (E.D. Mich.1980).

Based on the foregoing, the Court concludes that the agreement Metropolitan made with BCBSM to implement the furnishing of health insurance to GM employees is exempted from antitrust attack by

**9.** *Mackey* and *McCourt* involved antitrust attacks on the reserve system provisions of collective bargaining agreements in professional sports. *Mackey* was a challenge to the Rozelle rule in the National Football League, and *McCourt* was a challenge to a similar provision in the National Hockey League. Nevertheless, the Court knows of no reason why the principles enunciated in *Mackey* and approved in *McCourt* should be limited to cases challenging reserve clauses in collective bargaining agreements of professional sports. Indeed, Plaintiff uses the *Mackey* analytical framework to argue that the agreement herein does not come within the non-statutory labor exemption.

the non-statutory labor exemption.[10] The Court has already determined that this was the only concerted action undertaken by Metropolitan regarding payment for Plaintiff's procedure. Consequently, Metropolitan is entitled to judgment as a matter of law. Therefore, Metropolitan's motion for summary judgment on the antitrust claim is sustained.

### B. *Metropolitan's Motion to Dismiss*

In his second, third and sixth claims, Plaintiff asserts state law claims against Metropolitan for breach of insurance contract. Plaintiff requests the Court to exercise pendent jurisdiction over these claims. Like Ohio Medical, Metropolitan moves to dismiss these claims for lack of subject matter jurisdiction. Metropolitan bases this motion on the assumption that the Court has sustained its motion for summary judgment on Plaintiff's antitrust claim. Like Ohio Medical, Metropolitan contends that the Court should not exercise pendent jurisdiction over the state claims because the federal claim was not substantial enough to withstand a motion for summary judgment. For the reasons set forth in the Court's discussion of Ohio Medical's nearly identical motion, Metropolitan's motion to dismiss Plaintiff's second, third and sixth claim is sustained. Plaintiff's second, third and sixth claims are ordered dismissed without prejudice.

### III. *Plaintiff's Motion to File an Amended Complaint*

Also pending is Plaintiff's motion to file an amended complaint. (Doc. # 28). The Court informed counsel that it would defer ruling on this motion until ruling upon the other outstanding motions. (Doc. # 42).

Plaintiff's proposed amended complaint (Doc. # 39) [11] differs from his original complaint in two areas. First, Plaintiff has dropped Ohio Medical from his antitrust claim and alleges that the antitrust conspiracy was between Metropolitan and BCBSM.[12] Second, Plaintiff has added a seventh claim to his complaint. In the seventh claim, Plaintiff seeks to add ninety

**10.** In his memorandum in opposition to Defendant's motion for summary judgment (Doc. # 31), Plaintiff says:

> However, the Plaintiff's antitrust claim is not that Metropolitan, as part of a contract, combination, or conspiracy, eliminated coverage for the Plaintiff's surgical procedure for General Motors employees. Rather, the Plaintiff charges that such concerted action led Metropolitan to make an across-the-board elimination of coverage for the Plaintiff's surgical procedure, i.e., an elimination of coverage that affected all people insured by Metropolitan, whether or not they were employees of General Motors. The Plaintiff is not attacking the collective bargaining agreements executed by General Motors and the unions, or the implementation of those collective bargaining agreements by Metropolitan, BCBSM, or any other parties. Because the Plaintiff is attacking an agreement for an across-the-board elimination of coverage, the nonstatutory labor exemption described in Metropolitan's brief plainly does not dispose of this case or, indeed, apply at all.

The affidavits of Esposito establish that the only concerted action by Metropolitan on the subject of Plaintiff's surgical procedure was between it and BCBSM regarding the implementation of the insurance provisions of the collective bargaining agreement between GM and the unions. According to Esposito's affidavits, Metropolitan eliminated coverage of Plaintiff's procedure only for GM employees because of this. Neither Plaintiff's affidavit nor his answers to Metropolitan's interrogatories contain specific facts contradicting these statements. As a consequence, the Court has concluded, in the main body of the opinion, that a genuine issue of fact, regarding the extent to which Metropolitan agreed to eliminate coverage for Plaintiff's procedure, does not exist. The only agreement was between Metropolitan and BCBSM regarding coverage for GM employees. Unsupported conclusory allegations in a memorandum in opposition to summary judgment, such as those in Plaintiff's memo which are quoted above, are not sufficient to demonstrate the existence of genuine issues of fact. *Medical Arts Pharmacy v. Blue Cross & Blue Shield,* 518 F.Supp. 1100, 1108–09 (D.Conn.1981); *Saunders v. National Basketball Association,* 348 F.Supp. 649, 654 (N.D.Ill.1972).

**11.** Plaintiff attached a proposed amended complaint to his motion for leave to amend. (Doc. # 38). However, he later submitted a "proper proposed first amended complaint." It is the proper proposed amended complaint that the Court has considered.

**12.** Plaintiff does not make BCBSM a party to this claim.

additional defendants. Each of these additional Defendants is alleged to have entered into contracts to provide health insurance to Plaintiff's patients. Plaintiff contends that he is a third-party beneficiary of these contracts. Plaintiffs allege that the additional Defendants have breached these insurance contracts by refusing to pay for his surgical procedure.

■ Leave to amend under Fed.R. Civ.P. 15(a) "shall be freely given when justice so requires." The decision on whether to grant a motion to amend under Rule 15(a) is commended to the sound discretion of the district court. *Estes v. Kentucky Utilities Co.,* 636 F.2d 1131, 1133 (6th Cir.1980). A district court "may deny a motion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss." *Neighborhood Development Corporation v. Advisory Council,* 632 F.2d 21, 23 (6th Cir.1980). A district court may also deny a motion to amend if amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479, 484 (6th Cir.1973).

Applying these standards to Plaintiff's motion to amend, the Court concludes that Plaintiff's motion should be overruled.

Allowing the amendment as it relates to the antitrust claim would be futile. Plaintiff's proposed amended complaint would merely substitute BCBSM for Ohio Medical as Metropolitan's co-conspirator. However, in ruling on Metropolitan's motion for summary judgment, the Court, as well as the Plaintiff and Metropolitan, assumed Plaintiff alleged that Metropolitan and BCBSM engaged in concerted action against him. The Court determined that their only agreement came within the nonstatutory labor exemption to antitrust laws. The proposed amended complaint contains no allegations which would vary this conclusion. Indeed, in light of the statements in Plaintiff's affidavit and his response to Metropolitan's interrogatories, it would be impossible for Plaintiff to make allegations varying that conclusion.

In the proposed amended complaint, Plaintiff, in the seventh claim, seeks to add ninety additional Defendants. Plaintiff asserts a state law breach of insurance claim against each. The only alleged basis of jurisdiction for these claims is the Court's pendent jurisdiction.

■ This part of Plaintiff's proposed amended complaint would not withstand a motion to dismiss for lack of subject matter jurisdiction. The fundamental requisite of pendent jurisdiction is the federal and state claims, "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs, supra,* 383 U.S. at 725, 86 S.Ct. at 1138. It is patent that the claims for breach of insurance contract do not have a common nucleus of operative facts with the Plaintiff's antitrust claim. The facts, which engender the breach of insurance contract claims, are the existence of a policy, issued by one of the additional Defendants and covering one of Plaintiff's patients, and the breach of that policy by the issuing company. For each of these claims, these facts will be different. Plaintiff does not assert that any of these claims is at all related to the alleged antitrust conspiracy between Metropolitan and BCBSM.

Based on the foregoing, Plaintiff's motion for leave to file an amended complaint is overruled.

## IV. *Conclusion*

In conclusion, the Court has ruled on the outstanding motions in the following manner:

(1) Defendant Ohio Medical's motion for summary judgment (Doc. # 19) is sustained. Defendant Ohio Medical's motion to dismiss Plaintiff's fourth and fifth claims (Doc. # 19) is granted. Plaintiff's fourth and fifth are ordered dismissed without prejudice.

(2) Defendant Metropolitan's motion for summary judgment (Doc. # 13) is sustained. Defendant Ohio Medical's motion to dismiss Plaintiff's second, third and sixth claims is sustained.

Plaintiff's second, third and sixth claims are hereby ordered dismissed without prejudice.

(3) Plaintiff's motion for leave to file an amended complaint is overruled.

The clerk will enter the appropriate judgment for the Defendants.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.